IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THE VIRGINIA HORSEMEN'S
BENEVOLENT AND PROTECTIVE
ASSOCIATION, INC.,

    Plaintiff,

v.                                        Civil Action No. 3:17cv133

COLONIAL DOWNS, L.P.,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on two motions: (1) Defendant Colonial Downs, L.P.'s ("Colonial Downs") Motion to Dismiss, (ECF No. 2); and, (2) Plaintiff The Virginia Horsemen's Benevolent and Protective Association, Inc.'s (the "VHBPA") Motion to Remand, (ECF No. 11). The VHBPA responded to the Motion to Dismiss, (ECF No. 13), and Colonial Downs replied, (ECF No. 15). Colonial Downs responded to the Motion to Remand, (ECF No. 16), and the VHBPA replied, (ECF No. 17). The matters are ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant the Motion to Remand and deny the Motion to Dismiss as moot.

### I. Procedural and Factual Background

Colonial Downs, L.P. removed this case from the Circuit Court for the County of Henrico, Virginia, asserting three grounds for removal: "(1) jurisdiction is established under 15 U.S.C. § 3007(a)[1]; (2) a federal question appears on the face of the Complaint; and (3) the

---

[1] Section 3007(a) of the Interstate Horseracing Act of 1978, 15 U.S.C. §§ 3001–3007 (the "IHA") states: "Notwithstanding any other provision of law, the district courts of the United

determinative issue raised is controlled by federal law." (Not. Removal 1, ECF No. 1.) The third basis for removal, the question of whether federal law controls the determinative issue, constitutes the core of the dispute between the parties.

The Complaint seeks a declaratory judgment and to recover money under part of the Virginia Racing Act, found at Virginia Code § 59.1-369(5), which stated—at the relevant time—in part:

> Notwithstanding the provisions of § 59.1-392, the allocation of revenue from advance deposit account wagering shall include (i) a licensee fee paid to the Commission; (ii) an additional fee equal to 10 percent of all wagers made within the Commonwealth placed through an advance deposit account wagering licensee, out of which shall be paid: (a) one-half to all unlimited licensees and (b) *one-half to representatives of the recognized majority horsemen groups*; and (iii) an additional fee equal to one percent of all wagers made within the Commonwealth placed through an advance deposit account wagering licensee, which shall be paid to the Virginia Breeders Fund.

Va. Code § 59.1-369(5) (July 1, 2011 to June 30, 2015) (emphasis added).[2]

The VHBPA alleges that, between November 1, 2014, and April 8, 2015, Colonial Downs held an advanced deposit account wagering license from the Virginia Racing Commission and operated an advance deposit account wagering business under the name "EZ Horseplay." (Compl. ¶¶ 1–2, ECF No. 1-1.) The VHBPA contends that, during that time period, Virginia Code § 59.1-369(5) required Colonial Downs to pay a fee equal to five percent of all wagers made through EZ Horseplay "to the recognized majority horsemen groups, including the VHBPA as the recognized majority horsemen group for thoroughbred horsemen." (*Id.* ¶ 10.)

---

States shall have jurisdiction over any civil action under [the Interstate Horceracing] chapter, without regard to the citizenship of the parties or the amount in controversy." 15 U.S.C. § 3007(a).

[2] Unless the Court states otherwise, this Memorandum Opinion refers to the version of § 59.1-369(5) that applied during the time period relevant to the VHBPA's allegations.

On January 1, 2010, the parties entered into an agreement recognizing and providing terms for payment of the statutory fee under § 59.1-369(5) (the "Advanced Deposit Account Wagering Agreement"). That agreement also acknowledged the VHBPA as the "recognized majority horsemen group for thoroughbred horsemen in Virginia." (Compl. ¶ 12.) The Advanced Deposit Account Wagering Agreement remained in effect until October 31, 2014, when "Colonial Downs surrendered its unlimited and satellite facility licenses."[3] (*Id.* ¶¶ 14–15.) From the effective date of the Advanced Deposit Account Wagering Agreement until October 31, 2014, Colonial Downs had paid the requisite statutory fees under § 59.1-369(5).

On and after November 1, 2014, through April 8, 2015, Colonial Downs refused to pay the VHBPA the statutory fees from its EZ Horseplay operation, which amounted to $437,220.57. According to the VHBPA, Colonial Downs contends that the VHBPA did not constitute "the recognized majority horsemen group for thoroughbred horsemen in Virginia" between November 1, 2014, and April 8, 2015. (Compl. ¶ 18.) The VHBPA submits otherwise, alleging that the Virginia Racing Commission "has consistently and repeatedly recognized that the VHBPA is the recognized majority horsemen group for thoroughbred horsemen in Virginia, and that Colonial Downs is required to pay the VHBPA the fee required from revenue generated by" EZ Horseplay even after Colonial Downs ceased its other licenses. (*Id.* ¶ 19.)

## II. Analysis: Motion to Remand

Although the Notice of Removal asserts three bases for removal, the parties' disagreement pertains exclusively to whether "the determinative issue raised is controlled by

---

[3] Prior to October 31, 2014, Colonial Downs operated a race track in New Kent County, Virginia, and operated Off Track Betting facilities at several locations in Virginia. (Compl. ¶ 13.)

federal law."[4] (Not. Removal 1.) As the Court will explain, state law claims turn on questions of substantial federal law in only a "'special and small category' of cases." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). This case does not fit within that "special and small category of cases." Indeed, a claim pursuant to Virginia Code § 59.1-369(5) does not "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). The Court therefore lacks subject matter jurisdiction and will grant the Motion to Remand.

A. **Standard for Removal and Remand**

Under 28 U.S.C. § 1441(a),[5] a defendant may remove a civil action to a federal district court if the plaintiff could have originally brought the action in federal court. 28 U.S.C. § 1441(a). Section 1446 delineates the procedure for removal, including the requirement that the defendant file a notice of removal in the district court and the state court. *See* 28 U.S.C. §§ 1446(a), (d). The state court loses jurisdiction upon the removal of an action to federal court. 28 U.S.C. § 1446(d) ("[T]he State court shall proceed no further unless and until the case is remanded.").

---

[4] Colonial Downs also stated that "jurisdiction is established under 15 U.S.C. § 3007(a)" and that "a federal question appears on the face of the Complaint." (Not. Removal 1.) The Complaint, however, does not bring a civil action under § 3007(a), and the face of the Complaint does not raise a federal question. Accordingly, consistent with the parties' briefing, the Court will address only whether the VHBPA's state law claims turn on a substantial question of federal law.

[5] Section 1441(a) provides, in pertinent part:

[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

4

"The party seeking removal bears the initial burden of establishing federal jurisdiction." *Abraham v. Cracker Barrel Old Country Store, Inc.*, No. 3:11cv182, 2011 WL 1790168, at *1 (E.D. Va. May 9, 2011) (citing *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). No presumption favoring the existence of federal subject matter jurisdiction exists because federal courts have limited, not general, jurisdiction. *Id.* (citing *Pinkley Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999)). In deference to federalism concerns, courts must construe removal jurisdiction strictly. *Id.* (citing *Mulcahey*, 29 F.3d at 151). "'If federal jurisdiction is doubtful, a remand is necessary.'" *Id.* (quoting *Mulcahey*, 29 F.3d at 151).

Colonial Downs's Notice of Removal cites federal question jurisdiction under 28 U.S.C. § 1331[6] as the basis for subject matter jurisdiction in this case. Federal question jurisdiction exists under 28 U.S.C. § 1331 if a plaintiff's claims arise "under the Constitution, laws, or treaties of the United States."[7] 28 U.S.C. § 1331. In the "vast majority" of cases, a cause of action "arises under" the law that creates it. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004). Thus, the first step in a court's jurisdictional inquiry is to "discern whether federal or state law creates the cause of action." *Mulcahey*, 29 F.3d at 151. When it is apparent from the face of a plaintiff's complaint that federal law creates the cause of action, federal courts "unquestionably have federal subject matter jurisdiction." *Id.*

---

[6] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

[7] "The well-pleaded complaint rule has long governed whether a case 'arises under' federal law for the purposes of § 1331." *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002). Under the well-pleaded complaint rule, "federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Campbell v. Hampton Roads Bankshares, Inc.*, No. 2:12cv567, 2013 WL 652427, at *2 (E.D. Va. Feb. 19, 2013) (citing *Venezuela v. Massimo Zanetti Beverage U.S.A., Inc.*, 525 F. Supp. 2d 781, 784 (E.D. Va. 2007)).

If, as argued here, state law creates the cause of action, federal question jurisdiction will lie only if "it 'appears from the [complaint] that the right to relief depends upon the construction or application of [federal law].'" *Grable & Sons Metal Prods.*, 545 U.S. at 313 (quoting *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199 (1921)). This standard is met in only a "'special and small category' of cases." *Gunn*, 568 U.S. at 258 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

"In recent years, the Supreme Court has brought greater clarity to what it describes as a traditionally 'unruly doctrine,' emphasizing its 'slim contours.'" *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 182 (4th Cir. 2014) (quoting *Gunn*, 568 U.S. at 258)). Specifically, under *Grable* and *Gunn*, "federal jurisdiction over a state law claim will lie [only] if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. All four factors must be satisfied. "Where all four of these requirements are met, . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. at 313–14).

### B. The VHBPA's Right to Relief Does Not Necessarily Depend on Resolution of a Substantial Question of Federal Law

The four-factor test established in *Gunn* guides the Court's analysis. Because the Court finds that the VHBPA's state-law claims do not "necessarily raise" a "substantial" federal issue,[8]

---

[8] The Court will not address the second and fourth factors of the *Gunn* analysis in detail. Failure to satisfy *any* factor of that test deprives the Court of federal jurisdiction, and Colonial Downs plainly cannot meet the first and third factors. That said, regarding the second factor, if a federal issue does exist, it is "actually disputed." Also, as to the fourth factor, the parties dispute whether the federal issue is "capable of resolution in federal court without disrupting the federal-

6

the Court declines to find that this case belongs to the "'special and small category' of cases" in which a state law claim can give rise to federal question jurisdiction.

### 1. The Complaint Does Not "Necessarily Raise" a Federal Issue

The Complaint does not "necessarily raise" a federal issue. The state-law claim brought under Virginia Code § 59.1-369(5) rests on the theory that Colonial Downs owes money to the VHBPA because Colonial Downs operated an advanced deposit account wagering business during the time period in which the VHBPA was "the recognized majority horsemen group." Colonial Downs argues that it meets its burden to establish removal jurisdiction because resolution of the VHBPA's state-law claim "necessarily raise[s]" an issue of federal law under the IHA. This is true, according to Colonial Downs, because during the relevant time period, the Virginia Racing Act did not define "the recognized majority horsemen group." *See* Va. Code § 59.1-365 (March 23, 2007 to June 30, 2015) ("Definitions" section).[9] Colonial Downs contends that the Court must apply the IHA because, in order to determine whether the VHBPA was "the recognized majority horsemen group," the Court must look to the IHA's definition of "horsemen's group."[10]

Perhaps revealing of the weakness of its argument, Colonial Downs cites no authority in direct support of the premise that Virginia Code § 59.1-369(5) affords compensation only for

---

state balance approved by Congress." Given Colonial Downs's obvious inability to satisfy the other factors, however, the Court need not address the "closer" call of the fourth factor.

[9] As the Court will explain below, as of July 1, 2015, the Virginia Racing Act defines "recognized majority horsemen group." *See* Va. Code § 59.1-365 (effective July 1, 2015).

[10] Under the IHA, "'horsemen's group' means, with reference to the applicable host racing association, the group which represents the majority of owners and trainers racing there, for the races subject to the interstate off-track wager on any racing day." 15 U.S.C. § 3002(12).

"horsemen's group[s]" as defined by the IHA.[11] Moreover, Colonial Downs neglects to explain the significance of the differing terms used by the state and federal statutes. Notably, Virginia Code § 59.1-369(5) refers to a "recognized majority horsemen group," while the IHA defines "horsemen's group," 15 U.S.C. § 3002(12).

Instead, Colonial Downs offers conclusory statements about the IHA's application, such as: "The *only* potential avenue for establishing that status must comport with the requirements of the IHA, including the IHA's definition of 'horsemen's group'"; and, "the *only* source for the VHBPA's status is the IHA." (Colonial Downs Opp'n Mot. Remand 5 (emphasis added), ECF No. 16.)[12] In support of this notion, Colonial Downs sometimes suggests that a strong federal interest in maintaining the primacy of federal law—applying the IHA—should drive this case. (*See, e.g.*, Colonial Downs Opp'n Mot. Remand 6 ("The IHA was adopted for the purpose of bringing uniformity to the interstate wagering system and cooperation among the states and parties within the system.").)

---

[11] The Complaint alleges that the Virginia Racing "Commission has consistently and repeatedly recognized that the VHBPA is the recognized majority horsemen group for thoroughbred horsemen in Virginia." (Compl. ¶ 19.) On its face, this factual allegation suggests that the VHBPA's purported status as "the recognized majority horsemen group" turns not on federal law, but on designation by the Virginia Racing Commission. Of course, if the VHBPA's status actually turns on federal law, *i.e.*, if the IHA definition applies, the VHBPA's factual allegation carries no weight. The Court, therefore, must determine whether the IHA controls the VHBPA's status as "the recognized majority horsemen group."

[12] At other times, Colonial Downs seems to argue that federal law must apply simply because state law is silent on the issue. (*See* Colonial Downs Opp'n Mot. Remand at 5 ("Because there was no state law on the issue during the Relevant Time Period, the only source for the VHBPA's status is the IHA."); *id.* at 8 ("Because state law provided no mechanism for making this determination during the Relevant Time Period, the necessarily raised and disputed issue in this case is determined by the federal law.").)

The thrust of Colonial Downs's position, however, stops short of arguing preemption[13] and seems to conflate the fourth factor of the *Gunn* test (whether the federal issue is capable of resolution in federal court without disrupting the federal-state balance approved by Congress) with the more straightforward first factor (whether a federal *issue* is *necessarily raised*). The overall importance of the IHA in maintaining uniformity and balance does not affect the Court's evaluation of the federal issue factor. Construing removal jurisdiction strictly, Colonial Downs's arguments fail to persuade.[14]

Advancing a related theory, Colonial Downs points out that the Virginia Racing Act has since been amended to add a definition for "recognized majority horsemen group" and to grant the Virginia Racing Commission the authority to determine which groups meet that definition. *See* Va. Code § 59.1-365 (effective July 1, 2015). Colonial Downs relies on the amended legislation to demonstrate that the Virginia Racing Act previously omitted a definition of

---

[13] In advancing its federal issue argument, Colonial Downs carefully avoids direct reliance on preemption, perhaps because preemption as a defense cannot create a valid basis for removal. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[A] case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.").

As discussed below, however, Colonial Downs mentions preemption unpersuasively in arguing why the Virginia Racing Act's current definition of "recognized majority horsemen group" has no significance here.

[14] The Court distinguishes two cases on which Colonial Downs relies in so finding: *Snyder v. S.C. Elec. & Gas Co.*, 3:15cv4926, 2016 WL 1604637 (D.S.C. Apr. 22, 2016); and, *Sherr v. S.C. Elec. & Gas Co.*, 180 F. Supp. 3d 407 (D.S.C. 2016). *Snyder* and *Sherr* involved negligence claims against the same utility company that stemmed from the utility company's work on a licensed project with the Federal Energy Regulatory Commission ("FERC"). In both cases, the United States District Court for the District of South Carolina determined that the rules and regulations of the Federal Power Act ("FPA") and FERC determined the standard of care. Thus, the court in *Snyder* and *Shaw* concluded that the plaintiff's negligence claims "necessarily raise[d]" federal issues.

Here, on the other hand, unlike the standard of care governed by federal law in *Snyder* and *Sherr*, Colonial Downs cannot establish that the IHA definition actually applies. Rather, by making sweeping arguments about the purpose of the IHA and the need for uniformity in the interstate wagering system, Colonial Downs only argues that it *probably should*.

"recognized majority horsemen group."[15] While true, the amended legislation also cuts against Colonial Downs's contention that *only* the IHA could define "recognized majority horsemen group." Indeed, if Virginia law now explicitly defines the term, how can that definition comport with the federal definition that supposedly governed the VHBPA's claim during the relevant time period?

Colonial Downs tersely answers that question with passing references to preemption. (*See, e.g.*, Colonial Downs Opp'n Mot. Remand 7 ("The VHBPA's arguments would require the Court to 'roll back' the effective date of the statutory amendments to cover the Relevant Time Period and also find that those amendments are not preempted by the IHA.").) But preemption, as noted previously, cannot create a valid basis for removal. "[A] case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) (emphasis in original); *see also Nordan v. Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 584 (4th Cir. 2006) ("Under what has become known as the well-pleaded complaint rule, § 1331 federal question jurisdiction is limited to actions in which the plaintiff's well-pleaded complaint raises an issue of federal law; actions in which defendants merely claim a

---

[15] Colonial Downs argues that, during the relevant time period, other sections of the Virginia Racing Act referenced "recognized majority horsemen group" in a manner consistent with the IHA. (*See* Colonial Downs Opp'n Mot. Remand 4 (citing Va. Code § 59.1-369(14) ("The Commission shall require the existence of a contract between the licensee and the recognized majority horseman's group providing for purses and prizes."); Va. Code §§ 59.1-392(S) and (T)(2) (using the phrase "the horsemen's organizations representing a majority of the horsemen racing at a licensed unlimited race meeting.").) That statutory interpretation argument goes to the merits and does nothing to demonstrate how federal law controls the claim at issue. Indeed, the definition at issue *could* track the definition provided by the IHA without being controlled by it.

10

substantive federal defense to a state-law claim do not raise a federal question."). Thus, to the extent Colonial Downs's basis for removal relies on a preemption defense, it fails.[16]

Ultimately, by pointing out the Virginia Racing Act's failure to define "recognized majority horsemen group" during the relevant time period, Colonial Downs has identified an issue implicating the merits of this case. For jurisdictional purposes, however, Colonial Downs has not established that the IHA's definition of "horsemen's group" controls the Virginia Racing Act's use of "recognized majority horsemen group." Accordingly, the Complaint does not "necessarily raise" a federal issue.

### 2. The Supposedly Federal Issue is Not "Substantial"

Even if Colonial Downs could establish that the IHA controls the definition for "recognized majority horsemen group" during the relevant time period, that supposedly federal issue is not "substantial." As the Supreme Court explained in *Gunn*, "[t]he substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system *as a whole*."

---

[16] In its Notice of Removal, Colonial Downs advanced a more straightforward case of preemption. (Not. Removal 4–5.) In support, Colonial Downs cited *Horseman's Benevolent & Protective Association-Ohio Division, Inc. v. Dewine*, 666 F.3d 997 (6th Cir. 2012), in which the court assessed whether the IHA preempted a state law that allowed racetracks to secure authorization to simulcast races even if they had not obtained consent from a horsemen's group, *id.* at 1000. The court determined that securing the horsemen's consent constituted an integral part of the IHA, and the state law could not coexist with the IHA.

In opposing the Motion to Remand, Colonial Downs tempered its mention of "preemption," but cited a series of cases in which the court spoke of complete preemption, *see, e.g.*, *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22–23 (1983), or in which the plaintiff mistakenly brought an actual federal-law *claim* as a state-law claim, *see, e.g.*, *Berea v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 358 (6th Cir. 2015).

Notwithstanding the unavailability of a preemption defense for purposes of removal, those circumstances do not apply here. The IHA does not completely preempt the Virginia law at issue, the IHA does not govern the *claim* at issue, *i.e.*, the sharing of proceeds, and the VHBPA does not bring its claim pursuant to the IHA (nor could it have). Under Colonial Downs's theory, the Court could—at best—find that the IHA governs a definition needed to resolve the VHBPA's state-law claim. For the reasons already stated, however, the Court rejects that argument.

568 U.S. at 260 (emphasis added). The *Gunn* Court provided two cases that illustrate the narrow scope of what constitutes a substantial federal issue:

> In *Grable* itself, for example, the Internal Revenue Service had seized property from the plaintiff and sold it to satisfy the plaintiff's federal tax delinquency. Five years later, the plaintiff filed a state law quiet title action against the third party that had purchased the property, alleging that the IRS had failed to comply with certain federally imposed notice requirements, so that the seizure and sale were invalid. In holding that the case arose under federal law, we primarily focused not on the interests of the litigants themselves, but rather on the broader significance of the notice question for the Federal Government. We emphasized the Government's "strong interest" in being able to recover delinquent taxes through seizure and sale of property, which in turn "require[d] clear terms of notice to allow buyers . . . to satisfy themselves that the Service has touched the bases necessary for good title." The Government's "direct interest in the availability of a federal forum to vindicate its own administrative action" made the question "an important issue of federal law that sensibly belong[ed] in a federal court."
>
> A second illustration of the sort of substantiality we require comes from *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), which *Grable* described as "[t]he classic example" of a state claim arising under federal law. In *Smith*, the plaintiff argued that the defendant bank could not purchase certain bonds issued by the Federal Government because the Government had acted unconstitutionally in issuing them. We held that the case arose under federal law, because the "decision depends upon the determination" of "the constitutional validity of an act of Congress which is directly drawn in question." Again, the relevant point was not the importance of the question to the parties alone but rather the importance more generally of a determination that the Government "securities were issued under an unconstitutional law, and hence of no validity."

*Id.* at 260–61 (citations omitted).

The federal issue in dispute here, while important to the horseracing industry, has little—if any—significance to the federal system as a whole.[17] Indeed, whether Colonial Downs must share proceeds with the VHBPA does not affect the operation of the federal system in the way

---

[17] Colonial Downs explains that "[t]he policy of the IHA is to 'regulate commerce with respect to wagering on horseracing, in order to further the horseracing and legal off-track betting industries in the United States.'" (Colonial Downs Opp'n Mot. Remand 8 (citing 15 U.S.C. § 3001(b)).) "[F]urther[ing] the horseracing and legal off-track betting industries in the United States" does not substantially affect the federal system, especially given that this dispute involves the sharing of wagering fees between non-federal entities.

12

observed in either *Smith* (which spoke to the constitutionality of an act of Congress) or *Grable* (which involved the strong federal interest of facilitating the collection of taxes).

Colonial Downs, nonetheless, argues that this case survives the substantiality inquiry because it involves a "nearly pure issue of law." (Colonial Downs Opp'n Mot. Remand 8 (citing *Dominion Pathology Labs., P.C. v. Anthem Health Plans of Va., Inc.*, 111 F. Supp. 3d 731, 737 (E.D. Va. 2015)). The case upon which Colonial Downs depends, however, relied on *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006), which predated *Gunn* by seven years. To the extent *Empire Healthchoice* and *Gunn* conflict, the Court applies *Gunn*. *See Carmine v. Poffenbarger*, 154 F. Supp. 3d 309, 317 (E.D. Va. 2015) (applying *Gunn* because *Empire Healthchoice* "is not the Supreme Court's most recent discussion of the substantiality factor").[18] Therefore, the Court does not find the existence of a "nearly pure issue of law" dispositive. The supposedly federal issue raised here is not substantial.

### III. Analysis: The VHBPA's Request for Fees and Costs

The Court will deny the VHBPA's request for fees and costs. Under 28 U.S.C. § 1447(c), when a court remands a case, it "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Supreme Court has explained that, "[w]here an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

---

[18] Colonial Downs also relies on a bankruptcy case from the United States District Court for the District of Delaware that applied "a test similar to that for removal." (Colonial Downs Opp'n Mot. Remand 10 (citing *In re Magna Entm't Corp.*, 438 B.R. 380 (Bankr. D. Del. 2010)). In *Magna Entertainment*, the court assessed whether it should apply federal common law or state law to claims by simulcast operators to recover wagering proceeds allegedly held by the debtor. 438 B.R. at 394. The test applied concerned whether the "application of a federal common law rule would upset commercial expectations that state law would govern." *Id.* It did not concern any impact on the federal system as a whole, and this Court sees no basis for applying *Magna Entertainment* when assessing the substantiality factor here.

Because the narrow question presented to the Court on the VHBPA's Motion to Remand presents novel issues, and because the parties' briefing indicates a good faith effort from both sides, the Court finds that Colonial Downs had a reasonable, albeit incorrect, basis for removal. *See Bailey v. Spangler*, No. 3:14cv556, 2015 WL 5818215, at *3 (E.D. Va. Oct. 5, 2015) ("[E]ven where the presence of a federal question is dubious at best, courts have declined to award attorneys' fees under this section, because even the possibility of a federal question provides an objectively reasonable basis for removal."). The Court will deny the VHBPA's request for fees and costs.

### IV. Conclusion

For the foregoing reasons, the Court will grant the Motion to Remand and deny the VHBPA's request for fees and costs. (ECF No. 11.) The Court will deny the Motion to Dismiss as moot. (ECF No. 2.) The Court will remand this case to the Circuit Court for the County of Henrico. An appropriate order will accompany this Memorandum Opinion.

/s/ M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 9/8/17